[No. 1425.]

ROBERT SMITH *v.* THE STATE.

1. ACCOMPLICE—CHARGE OF THE COURT.—The trial court charged the jury as follows: "You can not convict alone upon the unsupported testimony of an accomplice. An accomplice is one who is not present at the commission of the offense, but who, before the act is done, advises, commands or encourages another to commit an offense; or who, being present, aids by acts or encourages by words the principal offender in the commission of the offense. Contradiction or want of corroboration must be upon some material issue." *Held*, error, because the second sentence confounds the two characters of offenders known as "principals" and "accomplices," and is misleading; and because, in the concluding sentence, the rule laid down is not in conformity with Article 741 of the Code of Criminal Procedure. See the opinion *in extenso* on the subject.

2. SAME.—In a prosecution for theft the court instructed the jury that "the possession of recently stolen property is not alone sufficient to convict upon, but may be by the jury considered as any other circumstance in the case to establish the guilt or innocence of the defendant." *Held*, error, as presenting the innocence of the defendant as an issue in the case, whereas the proper issue is guilty or not guilty. But it seems that this is not such error as would, of itself, necessitate the reversal of the present case.

3. THEFT—CHARGE OF THE COURT.—The defendant requested the court to instruct the jury that "the State must prove beyond a reasonable doubt the identity of the hog charged to have been stolen, and that the defendant stole the same; and that the property thus identified must be proven to be the property of the person alleged to be the owner thereof in the information." See a state of case wherein it is *held* that this instruction, though inartistically drawn, should have been given.

4. SAME—PRACTICE—EVIDENCE—OFFICERS.—The trial court sustained objections to the confession of the defendant, based upon the ground that the person who arrested him, and to whom he made the confession after due warning, had no warrant and was not an officer, and therefore did not hold him in legal custody. *Held*, erroneous, under Article 343 of the Code of Criminal Procedure, which provides that "all persons have the right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it, with the supposed offender, if he can be taken, before a magistrate, or delivering the same to a peace officer for that purpose." The same article provides that "to justify such seizure there must, however, be reasonable grounds to suppose the property to be stolen, and the seizure must be openly made, and the proceedings had without delay."

5. SAME.—A person exercising the right of arrest under the statute quoted is to all intents and purposes an officer *de facto* for the time being, and his

acts done whilst such relation to the defendant continues will subject him in effect to the same rights and penalties as attach to officers *de jure;* and the rights of defendant while in such custody would be determined as to his confessions in the same manner.

6. Practice—Evidence.—The best evidence of the non-consent of the owner to the taking of the property was the testimony of the owner himself, and it was error to admit secondary evidence of this fact without having first satisfactorily accounted for the absence of this best evidence.

Appeal from the County Court of Brazoria. Tried below before the Hon. A. E. Stratton, County Judge.

The information charged the appellant and Samuel Hawkins jointly with the theft of a hog, of the value of ten dollars, the property of Joseph Bates. The jury found the appellant on his separate trial guilty, and assessed his punishment at a fine of twenty-five dollars, and confinement in the county jail for one day.

Asa Granger was the first witness introduced by the State. He testified in substance that he and P. Reese were getting hogs out of McNeill's field in the fall of 1881. The dogs caught a listed barrow, marked with a swallow in the right ear. The witness had forgotten the mark in the left ear. Mr. Reese and the defendant put the hog on the witness's horse. When the party were going to where the dogs had caught the hog, the defendant said he had a mind to kill the d—d hog for eating his corn. The witness did not see the defendant kill the hog, but saw him and Samuel Hawkins cutting up meat later on the same day, in Hawkins's house. The defendant did not go to the field gate when the witness turned the hog out. The defendant had a hatchet with him when the party was turning hogs out of the field. The defendant gave the witness a small piece of the fresh meat he cut up at Hawkins's house.

On cross-examination, the witness testified that he was arrested, and a complaint was filed against him for the theft of this same hog. He admitted that he told the defendant's counsel, in the presence of J. A. Ballowe, that Wharton Bates had told him that he, witness, would not be prosecuted if he would testify against the defendant in this case, and that he assented; and that he told the defendant's lawyer that he knew nothing about the theft of the hog, and would not tell a lie about it. The complaint against the witness for participation in this offense was dismissed, and the witness has not since been arrested. In

going to the gate to turn the hog loose, the witness passed the defendant at a distance of about fifty yards. He, witness, turned the hog loose at the gate and went directly home. Samuel Hawkins's house is "fifty yards or so" distant from the gate.

Daniel McDaniels testified, for the State, in substance, that on the day the hog was killed he and Wharton Bates went to the defendant's house, and Bates told the defendant that he wanted to search his house. The defendant consented, and the search was made without objection from him. In the house they found a can of fresh cracklings, which the defendant said were beef cracklings. Bates tasted them and pronounced them pork cracklings. The defendant thereupon admitted that they were pork cracklings, and said that he got them from Isham Brooks. Pursuing their search, they found in the field, some three hundred yards from the house, the skin, head and entrails of a freshly slaughtered hog. The skin was that of a listed barrow. The animal had been killed by a stroke on the head with a hand ax. The witness did not remember the marks as shown by the remains.

Wharton Bates testified, for the State, that his father owned, in September, 1881, two listed hogs, a barrow and a sow, littered at the same time. The barrow was missed about the time alleged in the information, and has not since been found. The mark was a swallow-fork in the right ear, and a smooth crop off the left ear. On the day of the alleged theft the witness went to the defendant's house, accompanied by Dan McDaniels, and told the defendant that he wanted to search his house. The defendant made no objection. This witness detailed the result of the search exactly as it was detailed by the witness McDaniels. He declared that the hide and head were those of his father's missing barrow, and bore the ear-marks described. The head had been struck with the pole of a hatchet or hand ax.

The remains described were found near the house of the defendant—nearer his than other houses, though several people occupied houses in the neighborhood, and among them Asa Granger and Hawkins. The defendant and Dan McDaniels attended the witness in his search of the premises. The defendant's conduct during the search was suspicious, showing tardiness in going about, and stopping to get briars out of his feet. The witness's father had never given his consent to the taking

or the slaughter of the hog. The animal was worth about ten dollars. The witness had no warrant.

Without warrant or other legal process the witness took the defendant in charge and tried to keep him over night, to take him to the justice of the peace in Brazoria on the next day, but the defendant made his escape during the night, and surrendered to the authorities himself, on the next day. The State proposed to prove by this witness the confessions of the defendant while in his custody, and after legal warning, but the testimony was excluded by the court upon the ground that, the witness not being an officer, his arrest of the defendant was unauthorized, and his custody illegal. Before the witness could be stopped, however, he stated that the defendant said, "It is no use lying about it any longer. Sam Hawkins, Asa Granger and myself killed the hog." This testimony was promptly withdrawn by the court. The witness was armed at the time of the arrest, and the defendant could see the arms. The witness at that time had no especial enmity against the defendant for any cause whatever. Witness found fresh hog meat at Asa Granger's house, where defendant told him it was hid.

Isham Brooks testified, for the defendant, that on the day before the alleged offense, he gave the defendant some fresh pork cracklings and a piece of fresh hog meat. The defendant was at the time on horseback on his way home from Brazoria.

Louis January testified, for the defendant, that he saw the defendant, on the day before the alleged offense, when he went to Brazoria. He was on horseback, near Isham Brooks's house He had nothing tied to his saddle nor in his hands. Another witness testified to the same effect.

The motion for new trial assailed the verdict as unsupported by law or evidence, and raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

White, P. J. Exceptions having been taken on the trial by defendant to the charge of the court as given, and also to the refusal of certain specially requested instructions, it becomes necessary that we shall determine the questions raised concerning these charges.

Amongst other matters the court charged the jury as follows, viz.: "You cannot convict alone upon the unsupported testimony of an accomplice. An accomplice is one who is not present at the commission of the offense, but who, before the act is done, advises, commands or encourages another to commit an offense; or who, being present, aids by acts or encourages by words the principal offender in the commission of the offense. Contradiction or want of corroboration must be upon some material issue."

By reference to the statute it will be seen that whilst the first half of the second sentence quoted gives a proper definition of the term "accomplice" (Penal Code, Art. 79), the latter half of said sentence describes, not an accomplice, but one who under our law is known as "a principal;" that is, one who is present, and knowing the unlawful intent, aids by acts or encourages by words or gestures those actually engaged in the commission of the unlawful act. (Penal Code, Art. 75.) The defect in this portion of the charge is that it mixes and confounds the two different characters of offenders. "An accomplice is one *who is not present* at the commission of an offense," but "any person who advises or agrees to the commission of an offense, *and who is present* when the same is committed, *is a principal* thereto, whether he aids or not in the illegal act." (Penal Code, Art. 78.)

It is true that the rule of evidence prescribed for accomplice testimony is applicable alike to all accessories, *particeps criminis* and principals, and to this extent the term *accomplice* embraces all such offenses (*Williams* v. *The State*, 42 Texas, 392; *Irvine* v. *The State*, 1 Texas Ct. App., 301; *Jones* v. *The State*, 3 Texas Ct. App., 575; *Barrara* v. *The State*, 42 Texas, 260; *Roach* v. *The State*, 4 Texas Ct. App., 251); but this rule does not do away with the other distinctions made by the law in its definition of the character of such offenders in their relations to crime.

We are at a loss to understand the meaning of the last sentence quoted from the charge, viz.: "Contradiction or want of corroboration must be upon some material issue." If the effort was to instruct the jury upon the legal effect and sufficiency of accomplice testimony, then it is evident that either the court has misconceived the law, or from inadvertence has reversed the rule, and thereby must have confused, if it did not mislead, the jury. They should have been told, substantially in the language of the statute, that "a conviction cannot be had upon the testi-

mony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense." (Code Crim. Proc., Art. 741.) It might not be necessary to go further, in ordinary cases, than to charge them in the very language of the statute, Article 741. (*Hoyle* v. *The State*, 4 Texas Ct. App., 239; Clark's Crim. Law, p. 553, and note.)

Again: the court charged the jury that "the possession of recently stolen property is not alone sufficient to convict upon, but may be by the jury considered as any other circumstances in the case to establish the guilt *or innocence* of the defendant." Now, it is not the business of defendant to establish, nor of the jury to find that his *innocence* has been established. The question in all criminal prosecutions is not whether defendant is innocent, but whether he is guilty or not guilty, and a jury may legally and properly find a defendant not guilty even in cases where they do not believe him to be innocent, where the proof of guilt fails to convince them beyond a reasonable doubt. "While the error in this charge would not be sufficient to cause us to reverse the case, we have thought proper to call attention to it that it may not be repeated in future." (*Patterson* v. *The State*, 12 Texas Ct. App., 222.)

In view of the evidence we are also of the opinion that defendant was entitled to have his second special instruction given in charge to the jury, though not artistically drawn, and that the court erred in refusing it. That instruction was that "the State must prove beyond a reasonable doubt the identity of the hog charged to have been stolen, and that Bob Smith stole the same; and that the property thus identified must be proven to be the property of the person alleged to be the owner thereof in the information."

Several bills of exception were saved to rulings of the court upon questions of evidence. As shown by one of the bills, and also by the statement of facts, the defendant was arrested, after his premises had been searched and evidences of his guilt ascertained and found, by one Bates, and that during the time Bates had him under arrest he, the defendant, made confessions after he had been properly warned by Bates that such confessions might be used as evidence against him. When the State proposed to prove these confessions, it was objected by defendant that they were not admissible because Bates at the time had no

authority to arrest defendant, was not an officer, and that defendant not being "in custody of an officer," his confessions could not be used against him. (Code Crim. Proc., Art. 750.) The objection was sustained by the court upon this ground. This was error. "All persons have the right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender if he can be taken, before a magistrate, or delivering the same to a peace officer for that purpose. To justify such seizure there must, however, be reasonable grounds to suppose the property to be stolen, and the seizure must be openly made, and the proceedings had without delay." (Code Crim. Proc., Art. 343.)

A party exercising the right of arrest under this statute is to all intents and purposes an officer *de facto* for the time being, and his acts, whilst such relation to defendant continues, will subject him in effect to the same rights and penalties as attach to officers *de jure*. (Code Crim. Proc., Art. 246.) And the rights of defendant while in such custody would be determined as to his confessions in the same manner.

By another bill of exceptions it is shown that the court permitted the witness Bates, over objection of defendant, to tell the jury that his father, the owner of the hog, gave no consent to the taking by defendant. This was error. The best evidence of non-consent was that of the owner himself; and before secondary evidence as to that fact was admissible a reason should have been shown satisfactorily accounting for the non-production of the best evidence.

On account of the errors above discussed, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 21, 1883.